IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELINDA RUND,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

Civ. No. 07-1739-AA

OPINION AND ORDER

---

Tim Wilborn
P.O. Box 2768
Oregon City, Oregon 97045
Attorney for Plaintiff

Karin J. Immergut
United States Attorney
Britannia I. Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

Nancy A. Mishalanie
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
Attorneys for Defendant

AIKEN, Chief Judge:

Plaintiff Melinda Rund ("Rund") seeks judicial review of the Social Security Commissioner's final decision denying her application for benefits under Title II of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is reversed and remanded for further proceedings.

**BACKGROUND**

Born in 1963, Rund completed two years of post-secondary education. Tr. 165, 174. Between 1989 and 2000 Rund reports work as a hairdresser, radiographer, and mammographer. Tr. 169. Rund applied for DIB on May 20, 2003, alleging disability since April 6, 2001 due to chronic back pain. Tr. 155-57, 168.

The Commissioner denied Rund's application for DIB initially and upon reconsideration. Tr. 62-66, 70-72. An Administrative Law Judge ("ALJ") held hearings on June 14, 2005, and October 12, 2005 (tr. 588-626), and subsequently found Rund not disabled. Tr. 47-59. The Appeals Council remanded the matter back to the ALJ on August 9, 2006 to obtain additional vocational evidence regarding whether Rund possessed transferable skills. Tr. 18. The ALJ held a third hearing on February 14, 2007 (tr. 627-43), and again found Rund not disabled on March 12, 2007. Tr. 18-33. The Appeals Council denied review of that decision, making it the Commissioner's final decision. Tr. 7-9. Rund now seeks judicial review.

**DISABILITY ANALYSIS**

The Commissioner engages in a sequential process to determine disability under the meaning of the Act. 20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ found that Rund had not performed substantial gainful activity during

the period of alleged disability. Tr. 21; 20 C.F.R. § 404.1520(a)(4)(i).

At steps two and three, the ALJ found that Rund had severe impairments of degenerative disc disease of the lumbar spine and bilateral carpal tunnel syndrome, tr. 21-22, but that Rund's impairments did not meet or equal "one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 23; 20 C.F.R. § 404.1520(c)-(d).

At step four, the ALJ must evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC) to determine whether the claimant can perform past relevant work. The claimant's RFC is an assessment of work-related activities the claimant can perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling (SSR) 96-8p.

The ALJ found that Rund retained the following RFC:

> The claimant had the residual functional capacity to perform sedentary exertion work . . . . Additionally, she has non-exertional limitations. She is unable to stand and/or walk more than two hours in an eight-hour workday. She must periodically alternate sitting and standing to relieve pain or discomfort. She is limited to occasionally climbing and balancing and no kneeling, crouching, crawling or stooping. She is also limited to no more than occasional overhead reaching. She has no manipulative, visual, communicative or environmental limitations.

Tr. 23. Based on this assessment, the ALJ found that Rund's RFC precluded performance of her past relevant work and proceeded to step five. Tr. 31.

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f). Based on the RFC assessment and the testimony of a vocational expert, the ALJ found that Rund could perform a range of sedentary work.

Tr. 31-32. The ALJ therefore found Rund not disabled within the meaning of the Act. Tr. 33.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193.

**DISCUSSION**

Rund contends that the ALJ erred in finding her depression non-severe at step two and in his evaluation of her credibility and the medical evidence. Rund also argues that the ALJ made erroneous findings that she possessed transferable skills and could perform other work in the national economy, and exhibited bias in making his decision.

**I. Step Two Findings**

Rund contends that the ALJ failed to adequately assess and develop the record at step two regarding her depression and anxiety and her other impairments in combination.

At step two, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521. Such an

impairment must last, or be expected to last, twelve months. 20 C.F.R. § 404.1509.

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citations omitted). The assessment at step two is "'a de minimis screening device [used] to dispose of groundless claims' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is '"clearly established by medical evidence."' *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290 and S.S.R. 85-28). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers the ALJ's duty to develop the record. *Id.*

Here, Dr. Tatyrek, an examining psychologist, conducted a clinical interview and administered psychological tests and determined that Rund’s responses to a depression inventory showed “moderate” depression. Tr. 559-563. Dr. Tatyrek’s report concluded that his testing and interview indicated “notable depression and anxiety.” Tr. 563. The ALJ discussed Dr. Tatyrek’s findings but noted that Rund received no mental health assessment “other than this evaluation,” concluding “there is no confirmation of diagnoses of depression and anxiety.” Tr. 22. However, Rund has been diagnosed with and prescribed medication for depression by treating physicians. Despite such diagnoses, Rund did not testify or report that her depression caused symptoms that affected her ability to work. Further, no medical provider indicated that depression or other psychological impairments affected Rund's ability to work, and Rund cites to no medical evidence that reflects limitations resulting from her depression. Therefore, I find that the ALJ did not err in finding Rund's depression non-severe.

Rund similarly argues that the ALJ should have requested medical source statements from Drs. Tatyrek, Pearson, and Vander Waal in compliance with SSR 96-5p. SSR 96-5p directs adjudicators to request statements regarding what a claimant "can still do *despite a severe impairment*." SSR 96-5p at *4 (emphasis added). Because Rund does not establish that the ALJ erroneously found her depression, anxiety, and other cited impairments non-severe, the ALJ had no duty to request such statements regarding these impairments.

Finally, Rund asserts that the ALJ failed to consider her depression and anxiety in combination with her other impairments. However, the ALJ considered Rund's depression and related mental health complaints in his decision. Tr. 22, 27-28. Rund also claims that the ALJ erroneously disregarded her "many other physical impairments," including her radiculopathy, headaches, arthralgias, cervical strain, obesity, eating disorder, spinal degenerative changes and oseophytes in the cervical spine, degenerative changes in the thoracic spine, and epidural fibrosis in her sacral spine. Rund does not identify specific error in the ALJ's assessment of these impairments, instead pointing only to the ALJ's obligation to consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. § 404.1523.

The ALJ is not required to probatively discuss each piece of evidence in the record in this analysis. *Howard v.Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). However, the ALJ must refer to the medical record when finding that "the claimant has failed to provide evidence of medically documented impairments that meet or equal the listings." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Here, the ALJ specifically discussed Rund's headaches, possible eating disorder, and epidural fibrosis of the sacral spine. Tr. 21-23. The ALJ also noted Rund's ongoing cervical spine complaints, radiculopathy symptoms, weight, and imaging reports showing no significant

degenerative disc disease. Tr. 21-22, 25-26. Finally, the ALJ addressed the radiographic findings and Dr. Vander Waal's treatment notes for the period between December 2003 and April 2005. Tr. 22-23, 25-30, 540-45.

The ALJ appropriately cited the medical record in his assessment of Rund's combined impairments. Rund fails to point to a specific omission by the ALJ constituting reversible error. The ALJ appropriately considered Rund's impairments in combination.

**II. The ALJ's Credibility Finding**

Rund asserts that the ALJ predicated his credibility finding in part upon his finding that her depression was non-severe. Rund provides no citation for this proposition and does not develop this argument. Rund makes no other credibility challenge.

The ALJ did not base his credibility finding upon Rund's depression but rather upon Rund's activities of daily living and medical record. The ALJ may base his credibility finding upon such factors in combination. *Smolen*, 80 F.3d at 1284. Rund does not challenge this analysis and it is therefore sustained.

Rund also challenges the ALJ's reference to private disability payments. While an ALJ's credibility analysis may not chastise a claimant for seeking disability payments. *Ratto v. Sec.*, 839 F.Supp. 1415, 1428 (D. Or. 1993), the court may affirm a credibility finding even where specific reasons are not upheld. *Batson*, 359 F.3d at 1190. Therefore, the ALJ's credibility finding is affirmed.

**III. Dr. Vander Waal's Work Opinions**

Rund contends that the ALJ misread a residual capacity form submitted by Dr. Vander Waal. Rund also contends that Dr. Vandeer Waal restricted Rund to part time work.

Dr. Vander Waal treated Rund between November 2002 and April 2005. Tr. 459-461, 540-45. On June 10, 2003, Dr. Vander Waal completed an assessment form and wrote "0" as the maximum number of hours per day that Rund could perform sedentary work. Tr. 458. Dr. Vander Waal provided no support for this assessment, and wrote "never" in response to a question asking when Rund would experience a significant change in functional ability.

On December 8, 2003, Dr. Vander Waal noted that "Progressive Rehabilitation" had released Rund to full-time sedentary work, but that Rund believed she could only perform part time "to begin with." Tr. 545. As noted by the ALJ, Dr. Vander Waal stated that Rund needed to "move around every 15-20 minutes and probably should start back to work part-time." Tr. 544.

On June 28, 2005, Dr. Vander Waal completed a medical source statement issued by the Social Security Administration. Tr. 574-77. Dr. Vander Waal indicated that Rund could occasionally lift and carry ten pounds and stand at least two hours in the course of an eight-hour workday. Tr. 574. Dr. Vander Waal also stated that Rund must periodically alternate sitting and standing and that "frequent lifting would exacerbate her back pain." Tr. 575. Dr. Vander Waal indicated that Rund may occasionally climb and balance, and should never kneel, crouch, crawl, or stoop. *Id.* Dr. Vander Waal found Rund unlimited in reaching, handling, fingering, and feeling and assessed no visual or communicative limitations, and the ALJ relied on this statement when determining Rund's RFC. Tr. 30, 576.

The ALJ discussed Dr. Vander Waal's treatment notes throughout his decision. Tr. 22-23, 25-30. However, Rund correctly submits that the ALJ misread Dr. Vander Waal's June 2003 assessment form. The ALJ found that Dr. Vander Waal released Rund to full-time sedentary work in June 2003, even though Dr. Vander Waal marked "0" in response to how many hours per day

Rund could sustain sedentary work. Tr. 29, 458. This finding is erroneous.

Further, the ALJ relied on his erroneous finding regarding Dr. Vander Waal's June 2003 assessment when discounting Dr. Vander Waal's opinion in December 2003 that plaintiff should only work part-time. Tr. 30. While Rund asserts no error in the ALJ's reliance on Dr. Vander Waal's June 2005 assessment, I find that the ALJ erred in his evaluation of Dr. Vander Waal's opinion and conclusions rendered in June and December 2003.

**IV. Postural Limitations**

Rund asserts that the ALJs RFC assessment includes postural limitations that preclude performance of work in the national economy identified by the ALJ at step five.

Rund first argues that SSR 96-9p (*available at* 1996 WL 374185) mandates a determination of disability, contending that if an ALJ finds a claimant is precluded from stooping, she cannot perform sedentary work. The Commissioner correctly asserts that SSR 96-9p does not mandate a disability finding.

SSR 96-9p provides that an ability to stoop is "required in most unskilled sedentary occupations," and that "[a] complete inability to stoop would significantly erode the *unskilled* sedentary occupational base and a finding that the individual is disabled would usually apply." SSR 96-9p at *8 (emphasis added). The ALJ did not restrict Rund to "unskilled" work; rather, the ALJ found that Rund could perform unskilled jobs in addition to skilled jobs. Tr. 32. Because Rund is not restricted to unskilled work, this regulation does not apply. Additionally, even if Rund were restricted to unskilled work, the clerical assistant job identified by the ALJ at step five does not require stooping.

Rund also contends that the ALJ failed to identify how often she must change positions and

that this constitutes reversible error.

The ALJ found that Rund "must periodically alternate sitting and standing to reduce discomfort." Tr. 23. At the administrative hearing, Rund's attorney asked the vocational expert if an information clerk "absolutely" has a sit/stand option, or if periods would arise "where they wouldn't be able to stand up and move away from their work station." Tr. 641. The vocational expert responded, "there might be times throughout the day that they're working on something that it [sic] require that they be quite positioned anywhere from a half hour to an hour." *Id.* Rund maintains that "a clerk who must sit still for up to an hour to complete a task is simply not able to sit or stand at will to relieve pain or discomfort." Pl.'s Opening Br. 15.

However, the VE's testimony was in response to a specific question whether an information clerk may "move away from their work station" and does not establish that an information clerk would not have a sit/stand option. This court must affirm an ALJ's findings that are based upon the record and supported by "inferences reasonably drawn." *Batson*, 359 F.3d at 1193. The ALJ's reliance upon the vocational expert's testimony and his subsequent finding that Rund could perform work in the national economy was not erroneous.

**V. Transferable Skills**

Rund asserts that the ALJ erroneously found that she possessed transferable skills prior to making his findings at step five in the sequential proceedings. Defendant contends that the ALJ properly based his findings upon the vocational expert's testimony.

Skilled work requires "qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." 20 C.F.R. § 404.1568(c). Furthermore, "other skilled jobs may

require dealing with people, facts, or figures or abstract ideas at a high level of complexity" *Id.* Transferable skills are "skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1).

The nature of a claimant's past relevant work, including applicable skills, may be established via a claimant's testimony or the *Dictionary of Occupational Titles*. SSR 82-62 *3 (*available at* 1982 WL 31386). Relevant worker traits, or skills, must be used in connection with a work activity. SSR 82-41 at *3 (*available at* 1982 WL 31389). Where skills are an issue, an occupational reference source or a vocational expert should be consulted. SSR 82-41 at *4.

The vocational expert testified that Rund's transferable skills included interaction with patients, exercising responsibility, providing direction, guidance, information, and answering questions, as well as telephone support skills, inventory, scheduling, and clerical support. Tr. 634. Such skills are within the ambit of the Regulations. 20 C.F.R. § 404.1568(c). The ALJ may also consult a vocational expert in evaluating transferable skills. SSR 82-41 at *4. For these reasons, the ALJ's reliance upon the vocational expert's testimony was appropriate.

**VI. Bias**

Rund contends that the ALJ exhibited bias in his decision. A claimant asserting bias shoulders a significant burden of proof, as the presumption is that hearing officers are unbiased. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir. 2005). To succeed on a claim of bias the claimant must show that "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment," such as a conflict of interest or other specific reason. *Id.* (citations and internal quotations omitted).

Rund first asserts that the ALJ inappropriately noted her alleged overuse of narcotic medication. The ALJ's decision twice noted reports of Rund's utilization of emergency rooms for narcotic painkillers. Tr. 26, 29. The record firmly supports these references, showing that emergency room physicians repeatedly told Rund that she should not routinely seek narcotic pain relief from emergency room facilities. Tr. 446-47, 483-86, 494-96, 499-502. This reference is based upon the record and therefore appropriate.

Rund also asserts that the ALJ's reference to private disability payments supports a finding of bias. As noted, an ALJ's credibility analysis may not chastise a claimant for seeking benefits. *Ratto*, 839 F.Supp. at 1428. However, no authority suggests that citation to disability payments constitutes bias. This submission is not sustained.

Finally, Rund asserts that the ALJ "accuses" her treating physician, Dr. Pearson, of acting as an advocate. The ALJ wrote, "It appears that Dr. Pearson was trying to advocate for the Worker's Compensation claim filed by the claimant . . . his communications have generally addressed her inability to return to her past work, which is consistent with this decision." Tr. 29. Rund correctly asserts that an ALJ may not chastise a physician for patient advocacy, although this standard applies only when the physician's opinion is properly supported by clinical notes. *Ngueyn v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). However, the ALJ's reference to physician advocacy refers only to Rund's Worker's Compensation claim. The parties do not question whether Dr. Pearson's notes are adequately supported and this court will not initiate such analysis. For these reasons the ALJ's reference does not impugn his analysis of Rund's disability under the Commissioner's standards.

In sum, Rund fails to assert a sustainable bias claim under the appropriate legal standards.

///

**REMAND**

______The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991).

Here, the ALJ erroneously evaluated Dr. Vander Waal's June 2003 assessment form as releasing Rund to full-time sedentary work. Further, the ALJ relied on this incorrect finding when discounting Dr. Vander Waal's opinion in December 2003 that Rund should work only part time. However, I decline to apply the crediting as true doctrine, because Dr. Vander Waal's June 2003 assessment is not accompanied by clinical findings, and a June 2005 assessment releases Rund to

full-time work. Tr. 574-77. For this reason, questions remain regarding the severity and duration of Rund's impairments, and crediting Dr. Vander Waal's June 2003 restrictions do not necessarily establish disability.

In such instances, award of benefits is inappropriate. *Harman*, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly evaluated evidence. *Id.* If necessary, the ALJ must then revise his RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Rund's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

**ORDER**

For these reasons, this Court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 25 day of February, 2009.

/s/ Ann Aiken
Ann Aiken
United States District Judge